# EXHIBIT A

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

| | |
|---|---|
| **STATE OF SOUTH CAROLINA )<br>)<br>COUNTY OF BERKELEY )** | **IN THE COURT OF COMMON PLEAS<br>FOR THE<br>NINTH JUDICIAL CIRCUIT** |
| MICHAEL DANIELL, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HOME WIRELESS, INC. dba HOME TELECOM,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION SUMMONS**<br><br>**JURY TRIAL DEMANDED** |

TO: THE DEFENDANT ABOVE-NAMED:

YOU ARE HEREBY SUMMONED and required to answer the complaint herein, a copy of which is herewith served upon you, and to serve a copy of your answer to said complaint upon the subscriber, at her office at Post Office Box 2433, Myrtle Beach, South Carolina, 29578, within thirty (30) days after the service thereof, exclusive of the day of such service, and if you fail to answer the complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the complaint.

s/*Karolan Ohanesian*
Karolan Ohanesian, Esquire (SC #66513)
Glenn Ohanesian, Esquire (SC #15186)
Ohanesian Law Firm
Post Office Box 2433
Myrtle Beach, SC 29578
Phone: (843) 626-7193
Facsimile: (843) 492-5164
Email: OhanesianLawFirm@cs.com
**ATTORNEYS FOR PLAINTIFF**

1559

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

Samuel J. Strauss*
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

**Pro hac vice forthcoming*
*Attorneys for Plaintiff and Proposed Class*

April 17, 2025

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

| | |
|---|---|
| **STATE OF SOUTH CAROLINA**<br><br>**COUNTY OF BERKELEY** | **IN THE COURT OF COMMON PLEAS FOR THE NINTH JUDICIAL CIRCUIT** |
| **MICHAEL DANIELL**, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**HOME WIRELESS, INC. dba HOME TELECOM,**<br><br>Defendant. | Case No.<br><br>**PROPOSED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Michael Daniell ("Plaintiff") through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Home Wireless, Inc. dba Home Telecom ("Defendant" or "Home Telecom"), alleging as follows, based upon information and belief, investigation of counsel, and personal knowledge of Plaintiff.

## NATURE OF THE ACTION

1. This class action arises from Defendant's failure to protect highly sensitive data.

2. According to Defendant's Breach Notice: "On March 17, 2025, we were informed of a third-party data security incident involving Home Telecom and other companies. The incident identified unauthorized access to certain data belonging to our customers. On March 21, 2025, the vendor identified the specific impacted data." Defendant's Breach Notice is attached as Exhibit A.

3. While Defendant did not state exactly what type of information was compromised, it admitted "certain personal information including name, address, and social security number may have been exposed." Ex. A. Plaintiff refers to the compromised data as personally identifiable information, or "PII."

4. Defendant's Notice obfuscates the nature of the Data Breach and the threat it posed. The Notice fails to disclose how many people were impacted, how the Data Breach happened, how

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

long the Data Breach lasted before Defendant was "informed" of the Data Breach, who "informed" Defendant of the Data Breach, what "vendor" identified the specific impacted data, exactly what information was compromised, or whether Defendant paid a ransom to regain control of its systems. Given the paltry information included in Defendant's Breach Notice, Defendant's "Notice" simply informs consumers that there was a Data Breach, and nothing more.

5. Plaintiff has been locked out of his Home Telecom account for three to four months. Continuing its obfuscation, Defendant informed Plaintiff multiple times that it was having an "outage" when he called to inquire why he was completely locked out of his Home Telecom account and why he was unable to access any of his information.

6. Upon information and belief, Defendant was not having an "outage" when Plaintiff called to ask why he could not access his account, but rather, was subject to a ransomware attack, where cybercriminals encrypt the victims' personal data, preventing all access to the data, until a ransom is paid.

7. Defendant claims it started sending out Notice of the Data Breach on April 14, 2025, but Plaintiff has not received Notice, and Defendant has not disclosed the Data Breach to Plaintiff during his phone calls. Moreover, Defendant did not post a Notice on its website, which is an industry-standard practice, and Plaintiff has still not received notice from Defendant.

8. As of April 15, 2025, Defendant reported to the South Carolina Department of Consumer Affairs that 39,805 South Carolina residents were impacted by the Data Breach. This figure jumped to 55,763 South Carolina residents on April 16, 2025.[1] This suggests Defendant does not know how many South Carolina residents were impacted, or the ransomware attack threat is ongoing. Indeed, Plaintiff is still locked out of his Home Telecom account.

9. Upon information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity, failed to

---

[1] *Security Breach Notices,* SC DEPARTMENT OF CONSUMER AFFAIRS, https://consumer.sc.gov/identity-theft-unit/security-breach-notices (last visited April 17, 2025).

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

adequately monitor its agents, contractors, vendors, and suppliers in handling and securing the PII of Plaintiff, and failed to maintain reasonable security safeguards or protocols to protect the Class's PII—rendering it an easy target for cybercriminals.

10. Defendant's failure to discover the Data Breach signals gross negligence. Defendant's cybersecurity measures were so inadequate that it failed to discover the Data Breach, and instead had to be "informed" of the Data Breach by an undisclosed third-party, suggesting it did not discover the Data Breach itself. Defendant's negligence is evidenced by its failure to prevent the Data Breach, its inability to discover the breach in a timely fashion, and its continued inability to grant Plaintiff access to his account.

11. Given Defendant's failure to timely discover the Data Breach, and failure to disclose what information was compromised, Defendant made the victims vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their PII.

12. Based on Defendant's Notice, the Data Breach was ongoing for an undisclosed amount of time, possibly months, before Defendant was "informed of a third-party data security incident involving Home Telecom and other companies."

13. While Defendant claims that it started notifying some victims on April 14, 2025, approximately one month after it was "informed" of the Data Breach, Plaintiff has been totally locked out of his account for three to four months. Therefore, it is unclear exactly how long cybercriminals had access to Defendant's systems prior to March 17, 2025, and how long Defendant actually knew about it.

14. Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII misuse.

15. In failing to adequately protect the PII of its customers, failing to adequately notify them about the breach, and obfuscating the nature of the breach, Defendant violated state law and harmed an unknown number of its customers.

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

16. Plaintiff and the Class are victims of Defendant's gross negligence and inadequate cybersecurity measures. Specifically, Plaintiff and members of the proposed Class trusted Defendant with their PII. But Defendant betrayed that trust when Defendant failed to properly use industry-standard security practices to prevent the Data Breach.

17. Plaintiff is a current customer of Home Telecom and a victim of the Data Breach.

18. The exposure of one's PII to cybercriminals is a bell that cannot be unrung. Before the Data Breach, the private information of Plaintiff and the Class was exactly that—private. Not anymore. Now, their private information is permanently exposed and unsecure.

19. Plaintiff seeks, on behalf of himself and the Class, monetary damages and injunctive relief including lifetime credit monitoring and ID theft monitoring.

**PARTIES**

20. Plaintiff Michael Daniell is a natural person and citizen residing in Moncks Corner, South Carolina, where he intends to remain.

21. Defendant Home Telecom is a telecommunications company with corporate headquarters at 579 Stoney Landing Road, Moncks Corner, South Carolina 29461.

**JURISDICTION AND VENUE**

22. This Court has jurisdiction over Defendant because Defendant is a corporation formed and existing in this State.

23. This Court has personal jurisdiction over Defendant because it is headquartered in South Carolina, regularly conducts business in South Carolina, and has sufficient minimum contacts in South Carolina.

24. Venue is proper in this Court pursuant to SC Code § 15-70-20 and § 15-70-30 because Defendant's principal office is located in this County, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this County.

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

## BACKGROUND

***Defendant Collected and Stored the PII of Plaintiff and the Class***

25. Home Telecom is an independent telecommunications company based in South Carolina that was founded in 1904.[2] Home Telecom offers a variety of products, including internet plans, whole home wi-fi, internet security, TV streaming, telephone lines, and security and home automation.[3] Headquartered in Moncks Corner, South Carolina, Home Telecom employs close to 200 individuals.[4]

26. On information and belief, Defendant accumulates highly private PII of its former and current customers. Given the fact it has been in business since 1904, Defendant has accrued over 120 years of PII belonging to its current and former customers.

27. In collecting and maintaining the PII of its current and former customers, Defendant agreed it would safeguard the data in accordance with state law and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their PII.

28. Defendant understood the need to protect the PII of its current and former customers, and the need to prioritize its data security. Indeed, Home Telecom states in its Privacy Policy:

- Home Telecom takes reasonable precautions to protect your personal information against unauthorized access by storing the information on a secure server, which is accessible only by authorized personnel.
- Calix does not sell or otherwise distribute or disclose your information to third parties other than as described or authorized in the Agreement, including this Privacy Policy.

---

[2] *Home Telecom,* HOME TELECOM, https://www.homesc.com/ and *Can You Pass the Home Telecom History Quiz?* HOME TELECOM, https://www.homesc.com/blog/home-telecom-history-quiz (last visited April 17, 2025).

[3] *Internet,* HOME TELECOM, https://www.homesc.com/ (last visited April 17, 2025).

[4] *Home Telecom,* LINKEDIN, https://www.linkedin.com/company/home-telephone-company/ (last visited April 17, 2025).

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

- Calix deploys Intrusion Detection Systems (IDS) and Intrusion Prevention Systems (IPS) to alert and proactively contain potential threats.

29. On information and belief, Defendant has not implemented reasonable cybersecurity safeguards or policies to protect the PII of current and former customers, or trained its IT or data security employees to prevent, detect, and stop breaches of its systems.

30. On information and belief, Defendant does not employ IDS or IPS to alert and proactively contain threats – otherwise, it would have discovered the Data Breach in a timely fashion.

31. As a result of its inadequate cybersecurity system, Defendant leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to the PII of its current and former customers.

***Defendant Failed to Safeguard the PII of Plaintiff and the Class***

32. Plaintiff is a current customer of Defendant.

33. Plaintiff has not yet received Defendant's Breach Notice, although he has been locked out of his account for three to four months. When he calls Home Telecom to inquire why he is locked out of his account and when he will be able to access his account again, Home Telecom representatives dishonestly inform him that Home Telecom is suffering an "outage."

34. In response to Plaintiff's most recent call, Defendant informed Plaintiff that it was suffering from an "outage" just last week, although according to Defendant's Breach Notice, Defendant was aware of the Data Breach by March 17, 2024 at the latest.

35. Plaintiff is left wondering what information was accessed in the Data Breach, and when Defendant will regain control of his account.

36. As a condition of receiving services from Defendant, Plaintiff provided Defendant with at least his name, address, phone number, email address, passwords, social security number, and financial account information ("PII").

37. In collecting and maintaining PII, Defendant implicitly agreed that it will safeguard the data using reasonable means according to state and federal law. It did not.

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

38. At least 55,763 South Carolina residents have been impacted by the Data Breach.[5]

39. On or about April 14, 2025, Defendant claims it finally began notifying some Class Members the Data Breach. Ex. A. However, Defendant did not post a Notice on its website, which is an industry-standard practice, and Plaintiff has still not received notice from Defendant.

40. According to Defendant's Breach Notice: "On March 17, 2025, we were informed of a third-party data security incident involving Home Telecom and other companies. The incident identified unauthorized access to certain data belonging to our customers. On March 21, 2025, the vendor identified the specific impacted data." Defendant's Breach Notice is attached as Exhibit A.

41. Yet Plaintiff has been locked out of his account for three to four months, suggesting either Defendant was grossly negligent in failing to learn of the Data Breach prior to March 17, 2025, or Defendant was aware of the Data Breach prior to March 17, 2025.

42. While Defendant did not state exactly what type of information was compromised, it admitted "certain personal information including name, address, and social security number may have been exposed." Ex. A.

43. Defendant's Notice obfuscates the nature of the Data Breach and the threat it posed. The Notice fails to disclose how many people were impacted, how the Data Breach happened, how long the Data Breach lasted before Defendant was "informed" of the Data Breach, who "informed" Defendant of the Data Breach, what "vendor" identified the specific impacted data, exactly what information was compromised, or whether Defendant paid a ransom to regain control of its systems. Given the paltry information included in Defendant's Breach Notice, Defendant's "Notice" simply informs consumers that there was a Data Breach, and nothing more.

44. Given the fact Plaintiff has been locked out of his Home Telecom account for approximately three to four months, Defendant suffered a ransomware attack. As evidenced by the ransomware attack, Defendant's cybersecurity systems were completely inadequate and allowed

---

[5] *Security Breach Notices,* SC DEPARTMENT OF CONSUMER AFFAIRS, https://consumer.sc.gov/identity-theft-unit/security-breach-notices (last visited April 17, 2025).

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

cybercriminals to obtain files containing a treasure trove of thousands of its current and former members' highly private information continuously for an unknown period of time.

45. Thus, Defendant has kept and continues to keep the Class in the dark—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

46. Moreover, given Defendant's inadequate and vague Breach Notice, the Class Members who received the Notice are left wondering what information was actually accessed.

47. Despite its duties to safeguard PII, and its acknowledgement that we "understand the vital importance of protecting your personal information" (Ex. A), Defendant did not in fact follow industry standard practices in securing the PII of Defendant's current and former customers, as evidenced by the Data Breach.

48. In response to the Data Breach, Defendant does not even contend that it has taken steps to further enhance its security systems, which is a common industry-standard response to a data breach. This is alarming and warrants injunctive relief, as Defendant's cybersecurity measures were so inadequate that it failed to discover the Data Breach, and instead had to be "informed" of the Data Breach by an undisclosed third-party, suggesting it did not discover the Data Breach itself.

49. Nevertheless, through its Notice, Defendant recognized the actual imminent harm and injury that flowed from the Data Breach, advising Plaintiff to "enroll in Credit Monitoring services," "remain vigilant and monitor your accounts for suspicious or unusual activity," and "please take full advantage of these services." Ex. A.

50. Despite recognizing the harm that flowed from the Data Breach, Defendant waited an unreasonable amount of time before it began notifying victims, depriving Plaintiff and the Class of the earliest opportunity to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

51. On information and belief, Defendant has offered identity monitoring services to some victims, for only 12 months, which does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the information compromised involves PII that cannot be changed, such as Social Security numbers. Ex. A.

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

52. Even with several months of credit monitoring services, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' PII is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

53. Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's PII (although here, Social Security numbers were assumed to be compromised). Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff and the Class's financial accounts.

54. On information and belief, Defendant failed to adequately train its IT and data security employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over the PII of its current and former customers. Defendant's negligence is evidenced by its failure to prevent the Data Breach, its inability to discover the breach in a timely fashion, and its continued inability to grant Plaintiff access to his account.

55. Given Defendant's failure to timely discover the Data Breach, and failure to disclose what information was compromised, Defendant made the victims vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their PII.

56. Based on Defendant's Notice, the Data Breach was ongoing for an undisclosed amount of time, likely months, before Defendant was "informed of a third-party data security incident involving Home Telecom and other companies." This suggests Defendant was grossly negligent.

***Defendant Knew—Or Should Have Known—of the Risk of a Data Breach***

57. It is well known that PII is an invaluable commodity and a frequent target of hackers.

58. Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

59. In 2024, a 3,158 data breaches occurred, exposing approximately 1,350,835,988 sensitive records—a 211% increase year-over-year.[6]

60. Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[7]

61. Cyberattacks of telecommunication companies are becoming more frequent. Telecom networks are a high-priority target, "one that's in the bull's-eye of nation-state programs," a senior administration official said.[8] In December 2024, eight US telecommunication companies were hit in a telecom attack spree.[9] Telecommunication providers all over the world have recently suffered cyberattacks.[10]

62. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public, including Defendant.

63. Despite the prevalence of public announcements of data breach and data security compromises, amongst labor unions and other companies generally, and despite its duty to keep PII private and secure, Defendant failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

---

[6] *2024 Data Breach Annual Report*, IDENTITY THEFT RESOURCE CENTER, https://www.idtheftcenter. org/publication/2024-data-breach-report/ (last visited April 13, 2025).

[7] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (published Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware (last visited April 17, 2025).

[8] Matt Kapko, *At least 8 US companies hit in telecom attack spree, officials said* (published December 4, 2024), CYBERSECURITY DIVE, https://www.cybersecuritydive.com/news/telecom-hack-salt-typhoon-china/734686/#:~:text=Deputy%20National%20Security%20Advisor%20for,crisis%20or%20conflict%20as%20well.%E2%80%9D (last visited April 17, 2025).

[9] *Id.*

[10] James, *12 recent cyber-attacks on the telco sector* (published July 21, 2024), WISDIAM, https://wisdiam.com/publications/recent-cyber-attacks-telcos/ (last visited April 17, 2025).

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

64. This readily available and accessible information confirms that, prior to the Data Breach, Defendant knew or should have known that (i) ransomware actors were targeting entities such as Defendant, (ii) ransomware gangs were ferociously aggressive in their pursuit of entities such as Defendant, (iii) ransomware gangs were leaking corporate information on dark web portals, and (iv) ransomware tactics included extortion and threatening to release stolen data.

65. In light of the information readily available and accessible before the Data Breach, Defendant knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' PII could be accessed, exfiltrated, and published as the result of a cyberattack. Data breaches are so prevalent in today's society therefore making the risk of experiencing a data breach entirely foreseeable to Defendant.

***Plaintiff's Experiences and Injuries***

66. Plaintiff is a customer of Defendant and a data breach victim.

67. As a condition of receiving telecommunication services, Defendant required Plaintiff to provide his PII, including at least his name, telephone number, home address, Social Security number, financial account information, and email address.

68. Plaintiff provided his PII to Defendant and trusted that the company would use reasonable measures to protect it according to state and federal law.

69. As a result of its inadequate cybersecurity measures, Defendant exposed Plaintiff's PII for theft by cybercriminals, and given the purpose of a ransomware attack, for sale on the Dark Web.

70. Indeed, given the fact Plaintiff is still locked out of his account, the Data Breach may be ongoing. Therefore, to the extent Defendant does not pay the ransom, or does not reappropriate the data, Plaintiff's PII and the PII of the Class has already been or will be published imminently on the Dark Web.

71. Defendant deprived Plaintiff of the earliest opportunity to guard himself against the Data Breach's effects by failing to promptly discover and notify him about the Data Breach.

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

72. Plaintiff suffered actual injury from the exposure of his PII —which violates his rights to privacy.

73. Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PII. After all, PII is a form of intangible property—property that Defendant was required to adequately protect.

74. As a result of the Data Breach, Plaintiff has spent time and made reasonable efforts to mitigate its impact, including but not limited to researching the Data Breach, reviewing credit card and financial account statements and monitoring his credit information. Plaintiff has also called Defendant multiple times, only to be informed that Defendant is suffering an "outage."

75. Plaintiff will continue to spend considerable time and effort monitoring his accounts to protect himself from identity theft. Plaintiff fears for his personal financial security and uncertainty over what PII was exposed. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

76. And in the aftermath of the Data Breach, Plaintiff has suffered from a significant spike in spam calls and scam text messages.

77. Plaintiff is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from his PII being placed in the hands of unauthorized third parties. This injury is worsened by Defendant's failure to promptly inform Plaintiff about the Data Breach.

78. Once an individual's PII is for sale and access on the Dark Web, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[11] Plaintiff's PII was compromised as a result of the Data Breach.

79. Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

[11] *What do Hackers do with Stolen Information,* AURA, https://www.aura.com/learn/what-do-hackers-do-with-stolen-information (last visited April 13, 2025).

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

Indeed, Plaintiff is still locked out of his account, suggesting the Data Breach is ongoing. Moreover, Defendant does not even contend that it has taken steps to further enhance its security systems, which is a common industry-standard response to a data breach.

80. Plaintiff also has a continuing interest in lifetime credit monitoring and identity theft monitoring on account of the Data Breach.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

81. Plaintiff and members of the proposed Class have suffered injury from the misuse of their PII that can be directly traced to Defendant.

82. As a result of Home Telecom's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. Plaintiff and the class have suffered or are at an increased risk of suffering:

a. The loss of the opportunity to control how their PII is used;

b. The diminution in value of their PII;

c. The compromise and continuing publication of their PII;

d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f. Delay in receipt of tax refund monies;

g. Unauthorized use of stolen PII; and

h. The continued risk to their PII, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII in its possession.

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

83. Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

84. The value of Plaintiff's and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

85. Social Security numbers are particularly attractive targets for hackers because they can easily be used to perpetrate identity theft and other highly profitable types of fraud. Moreover, Social Security numbers are difficult to replace, as victims are unable to obtain a new number until the damage is done.

86. It can take victims years to spot identity or PII theft, giving criminals plenty of time to use that information for cash.

87. One such example of criminals using PII for profit is the development of "Fullz" packages.

88. Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

89. The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and the Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and the Class, and it is

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and members of the Class's stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

90. Defendant disclosed the PII of Plaintiff and members of the proposed Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII of Plaintiff and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

91. Defendant's failure to promptly discovery the Data Breach and properly notify Plaintiff and the Class of the Data Breach exacerbated Plaintiff's and the Class's injuries by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach. Indeed, Defendant dishonestly continues to tell Plaintiff that it is suffering from an "outage."

***Defendant failed to adhere to FTC guidelines.***

92. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PII.

93. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

a. protect the personal customer information that they keep;
b. properly dispose of personal information that is no longer needed;
c. encrypt information stored on computer networks;
d. understand their network's vulnerabilities; and
e. implement policies to correct security problems.

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

94. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

95. The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

96. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

97. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to employees' PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Failed to Follow Industry Standards***

98. Several best practices have been identified that—at a minimum—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

99. Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers;

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

100. Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

101. These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

## CLASS ACTION ALLEGATIONS

102. Plaintiff is suing on behalf of himself and the proposed Class ("Class"), defined as follows:

> **All individuals residing in the United States whose PII was compromised in Defendant's Data Breach, including all those who received notice of the breach.**

103. Excluded from the Class is Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

104. Plaintiff reserves the right to amend the class definition.

105. This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

a. **Numerosity**. Plaintiff's claim is representative of the proposed Class, consisting of at least 39,805 individuals, far too many to join in a single action;

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

b. **Ascertainability**. Class members are readily identifiable from information in Defendant's possession, custody, and control;

c. **Typicality**. Plaintiff's claim is typical of Class member's claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

d. **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's interests. His interest does not conflict with Class members' interests, and Plaintiff has retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

e. **Commonality**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for all Class members. Indeed, it will be necessary to answer the following questions:

a. Whether Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII;

b. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. Whether Defendant was negligent in maintaining, protecting, and securing PII;

d. Whether Defendant breached contract promises to safeguard Plaintiff's and the Class's PII;

e. Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

f. Whether Defendant's Breach Notice was reasonable;

g. Whether the Data Breach caused Plaintiff's and the Class's injuries;

h. What the proper damages measure is; and

i. Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

f. **Appropriateness**. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

g. Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

**FIRST CLAIM FOR RELIEF**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

105. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

106. Plaintiff and the Class entrusted their PII to Defendant on the premise and with the understanding that Defendant would safeguard their PII, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

107. Defendant owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their PII in a data breach. And here, that foreseeable danger came to pass.

108. Defendant has full knowledge of the sensitivity of the PII and the types of harm

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

that Plaintiff and the Class could and would suffer if their PII was wrongfully disclosed.

109. Defendant owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices. After all, Defendant actively sought and obtained Plaintiff's and Class Members' PII.

110. Defendant owed—to Plaintiff and Class Members—at least the following duties to:

a. exercise reasonable care in handling and using the PII in its care and custody;

b. implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized access;

c. promptly detect attempts at unauthorized access;

d. notify Plaintiff and Class Members within a reasonable timeframe of any breach to the security of their PII.

111. Also, Defendant owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

112. Defendant also had a duty to exercise appropriate clearinghouse practices to remove PII it was no longer required to retain under applicable regulations.

113. Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

acts of a third party.

114. Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential PII, a necessary part of employment or account creation from Defendant.

115. The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant holds vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII — whether by malware or otherwise.

116. PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff's and Class Members' and the importance of exercising reasonable care in handling it.

117. Defendant improperly and inadequately safeguarded the PII of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

118. Defendant breached these duties as evidenced by the Data Breach.

119. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class Members' PII by:

a. disclosing and providing access to this information to third parties and

b. failing to properly supervise both the way the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

120. Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the PII of Plaintiff and

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

Class Members which actually and proximately caused the Data Breach and Plaintiff's and Class Members' injury.

121. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and Class Members' injuries-in-fact.

122. Defendant has admitted that the PII of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

123. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

124. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**SECOND CLAIM FOR RELIEF**
**Negligence *per se***
**(On Behalf of Plaintiff and the Class)**

125. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

126. Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII.

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

127. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the PII entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff's and the Class Members' sensitive PII.

128. Defendant breached its respective duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII.

129. Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

130. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

131. But for Defendant's wrongful and negligent breach of its duties owed, Plaintiff and Class Members would not have been injured.

132. The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

133. Defendant's violations and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

134. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**THIRD CLAIM FOR RELIEF**
**Gross Negligence**
**(On Behalf of Plaintiff and the Class)**

135. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

136. Plaintiff and the Class entrusted their PII to Defendant on the premise and with the understanding that Defendant would safeguard their PII, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

137. Defendant owed a duty of care to Plaintiff and Class members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their PII in a data breach. And here, that foreseeable danger came to pass.

138. Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if their PII was wrongfully disclosed.

139. Defendant owed these duties to Plaintiff and Class members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices. After all, Defendant actively sought and obtained Plaintiff and Class members' PII.

140. Defendant owed—to Plaintiff and Class members—at least the following duties to:

a. exercise reasonable care in handling and using the PII in its care and custody;

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

b. implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized access;

c. promptly detect attempts at unauthorized access;

d. notify Plaintiff and Class members within a reasonable timeframe of any breach to the security of their PII.

141. Thus, Defendant owed a duty to timely and accurately disclose to Plaintiff and Class members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

142. Defendant also had a duty to exercise appropriate clearinghouse practices to remove PII it was no longer required to retain under applicable regulations.

143. Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

144. Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential PII, a necessary part of obtaining services from Defendant.

145. The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant holds vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII —

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

whether by malware or otherwise.

146. PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and Class members' and the importance of exercising reasonable care in handling it.

147. Defendant improperly and inadequately safeguarded the PII of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach. Defendant's failure to exercise slight care, or the care necessary under the circumstances, resulted in the Data Breach and injury to Plaintiff and the Class.

148. Defendant breached these duties as evidenced by the Data Breach.

149. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class members' PII by:

a. disclosing and providing access to this information to third parties and

b. failing to properly supervise both the way the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

150. Defendant breached its duties by failing to exercise slight care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII of Plaintiff and Class members which actually and proximately caused the Data Breach and Plaintiff and Class members' injury.

151. Defendant further breached its duties by failing to promptly discover and provide timely notice—or any notice at all—of the Data Breach to Plaintiff and Class members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and Class members' injuries-in-fact.

152. Defendant further breached its duties by failing to inform Plaintiff that his

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

information was compromised in a Data Breach, instead stating that Plaintiff was locked out of his account due to an "outage."

153. Defendant has admitted that the PII of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

154. As a direct and traceable result of Defendant's gross negligence and/or negligent supervision, Plaintiff and Class members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

155. Defendant's breach of its common-law duties to exercise care and its failures and gross negligence actually and proximately caused Plaintiff and Class members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's gross negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

156. In sum, Defendant committed gross negligence by failing to exercise even slight care for the reasons discussed *supra*.

**FOURTH CLAIM FOR RELIEF**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

157. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

158. Defendant offered to employ or provide service to Plaintiff and members of the Class if, as a condition of that employment or service, Plaintiff and members of the Class provided Defendant with their PII.

159. In turn, Defendant agreed it would not disclose the PII it collects to unauthorized

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

persons. Defendant also promised to safeguard employee or customer PII.

160. Plaintiff and the members of the Class accepted Defendant's offer by providing PII to Defendant in exchange for employment or service with Defendant.

161. Implicit in the parties' agreement was that Defendant would provide Plaintiff and members of the Class with prompt and adequate notice of all unauthorized access and/or theft of their PII.

162. Plaintiff and the members of the Class would not have entrusted their PII to Defendant in the absence of such an agreement with Defendant.

163. Defendant materially breached the contracts it had entered with Plaintiff and members of the Class by failing to safeguard such information and failing to notify them promptly of the intrusion into its computer systems that compromised such information. Defendant also breached the implied contracts with Plaintiff and members of the Class by:

a. Failing to properly safeguard and protect Plaintiff's and members of the Class's PII;

b. Failing to promptly discover the Data Breach and properly notify Plaintiff and members of the Class;

c. Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement; and

d. Failing to ensure the confidentiality and integrity of electronic PII that Defendant created, received, maintained, and transmitted.

164. The damages sustained by Plaintiff and members of the Class as described above were the direct and proximate result of Defendant's material breaches of its agreement(s).

165. Plaintiff and members of the Class have performed under the relevant agreements, or such performance was waived by the conduct of Defendant.

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

166. The covenant of good faith and fair dealing is an element of every contract. All such contracts impose upon each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

167. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

168. Defendant failed to advise Plaintiff and members of the Class of the Data Breach promptly and sufficiently.

169. Defendant failed to inform Plaintiff of the Data Breach, despite his repeated phone calls.

170. In these and other ways, Defendant violated its duty of good faith and fair dealing.

171. Plaintiff and members of the Class have sustained damages because of Defendant's breaches of its agreement, including breaches of it through violations of the covenant of good faith and fair dealing.

172. Plaintiff, on behalf of himself and the Class, seeks compensatory damages for breach of implied contract, which includes the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

**FIFTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of the Plaintiff and the Class)**

173. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

174. This claim is pled in the alternative to the breach of implied contractual duty claim.

175. Plaintiff and members of the Class conferred a monetary benefit upon Defendant in exchange for receiving Defendant's services. Defendant also benefited from the receipt of Plaintiff's and the Class's PII, as this was used to facilitate its provision of services to Plaintiff and the Class.

176. Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff and members of the Class.

177. Under principals of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and the proposed Class's services and their PII because Defendant failed to adequately protect their PII. Plaintiff and the proposed Class would not have provided their PII or worked for Defendant at the payrates they did had they known Defendant would not adequately protect their PII.

178. Defendant should be compelled to disgorge into a common fund to benefit Plaintiff and members of the Class all unlawful or inequitable proceeds received by it as a result of the conduct and Data Breach alleged here.

**SIXTH CLAIM FOR RELIEF**
**Invasion of Privacy**
**(On Behalf of the Plaintiff and the Class)**

179. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

180. Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

181. Defendant owed a duty to its employees, including Plaintiff and the Class, to keep this information confidential.

182. The unauthorized acquisition (i.e., theft) by a third party of Plaintiff's and Class

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

Members' PII is highly offensive to a reasonable person.

183. The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class disclosed their sensitive and confidential information to Defendant as part of their services or employment, but they did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

184. The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

185. Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

186. Defendant acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

187. Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

188. As a proximate result of Defendant's acts and omissions, the PII of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

189. Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class because their PII are still maintained by Defendant with its inadequate cybersecurity system and

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

policies.

190. Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the PII of Plaintiff and the Class.

191. In addition to injunctive relief, Plaintiff, on behalf of himself and the other members of the Class, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

**PRAYER FOR RELIEF**

Plaintiff and members of the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B. Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C. Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D. Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen PII;

E. Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F. Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

G. Awarding attorneys' fees and costs, as allowed by law;

H. Awarding prejudgment and post-judgment interest, as provided by law;

I. Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting such other or further relief as may be appropriate under the circumstances.

**JURY DEMAND**

Plaintiff hereby demands that this matter be tried before a jury.

s/*Karolan Ohanesian*
Karolan Ohanesian, Esquire (SC #66513)
Glenn Ohanesian, Esquire (SC #15186)
Ohanesian Law Firm
Post Office Box 2433
Myrtle Beach, SC 29578
Phone: (843) 626-7193
Facsimile: (843) 492-5164
Email: OhanesianLawFirm@cs.com
**ATTORNEYS FOR PLAINTIFF**

Samuel J. Strauss*
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

**Pro hac vice forthcoming*
*Attorneys for Plaintiff and Proposed Class*

April 17, 2025

Home Telecom
579 Stoney Landing Road
Moncks Corner, SC 29461

HOME TELECOM

*Via First-Class Mail*

[redacted]

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

000010102G0500 P

April 14, 2025

Notice of Data Security Incident

To [redacted],

We are writing to inform you of an incident that may have exposed your personal information. Despite the increasing frequency and sophistication of these incidents, Home Telecom remains committed to proactively protecting customer data. In this unfortunate situation a data breach has occurred, and we are following the industry's best practices to equip our customers with the necessary resources to protect themselves. This letter explains what happened and provides instructions on the steps that you can take to help protect your personal information.

**What Happened**

On March 17, 2025, we were informed of a third-party data security incident involving Home Telecom and other companies. The incident identified unauthorized access to certain data belonging to our customers. On March 21, 2025, the vendor identified the specific impacted data.

**What Information was Involved**

There is no evidence that any of your personal information has been accessed or misused. However, certain personal information including name, address, and social security number may have been exposed.

**What We Are Doing**

We are providing you with access to **Cyberscout**, a TransUnion company, for identity monitoring and protection services at no charge. This service provides you with alerts for twelve (12) months from the date of enrollment when changes occur to your credit file. You receive a notification on the same day that the change or update takes place with the bureau. And we are providing you with proactive fraud assistance to help with any questions that you might have or if you become a victim of fraud. Cyberscout specializes in fraud assistance and remediation services.

**How Do I Enroll for The Free Services?**

To enroll in Credit Monitoring services at no charge, please log on to https://bfs.cyberscout.com/activate and follow the instructions provided. When prompted please provide the following unique code to receive services: [redacted]. To receive the monitoring services described above, you must enroll within 90 days from the date of this letter. The enrollment requires an internet connection and e-mail account and may not be available to minors under the age of 18. Please note that when signing up for monitoring services, you may be asked to verify personal information for your own protection to confirm your identity.

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

0000102028000 p

## Additional Information

**Credit Reports**: You may obtain a copy of your credit report, free of charge, whether or not you suspect any unauthorized activity on your account. You may obtain a free copy of your credit report from each of the three nationwide credit reporting agencies. To order your free credit report, please visit www.annualcreditreport.com, or call toll-free at 1-877-322-8228. You can also order your annual free credit report by mailing a completed Annual Credit Report Request Form (available at https://www.consumer.ftc.gov/articles/0155-free-credit-reports) to: Annual Credit Report Request Service, P.O. Box 105281, Atlanta, GA, 30348-5281.

**Security Freeze:** You also have the right to place a security freeze on your credit report. A security freeze is intended to prevent credit, loans, and services from being approved in your name without your consent. To place a security freeze on your credit report, you need to make a request to each consumer reporting agency. You may make that request by certified mail, overnight mail, regular stamped mail, or by following the instructions found at the websites listed below. The following information must be included when requesting a security freeze (note that if you are requesting a credit report for your spouse or a minor under the age of 16, this information must be provided for him/her as well):

(1) full name, with middle initial and any suffixes;
(2) Social Security number;
(3) date of birth;
(4) current address and any previous addresses for the past five years; and
(5) any applicable incident report or complaint with a law enforcement agency or the Registry of Motor Vehicles.

The request must also include a copy of a government-issued identification card and a copy of a recent utility bill or bank or insurance statement. It is essential that each copy be legible, display your name and current mailing address, and the date of issue. As of September 21, 2018, it is free to place, lift, or remove a security freeze. You may also place a security freeze for children under the age of 16. You may obtain a free security freeze by contacting any one or more of the following national consumer reporting agencies:

| **Equifax Security Freeze** | **Experian Security Freeze** | **TransUnion Security Freeze** |
|---|---|---|
| P.O. Box 105788<br>Atlanta, GA 30348<br>1-888-298-0045<br>https://www.equifax.com/personal/credit-report-services/credit-freeze/ | P.O. Box 9554<br>Allen, TX 75013<br>1-888-397-3742<br>www.experian.com/freeze/center.html | P.O. Box 160<br>Woodlyn, PA 19094<br>1-800-916-8800<br>www.transunion.com/credit-freeze |

**Fraud Alerts:** You can place fraud alerts with the three credit bureaus by phone and online with:

- Equifax (https://assets.equifax.com/assets/personal/Fraud_Alert_Request_Form.pdf);
- TransUnion (https://www.transunion.com/fraud-alerts); or
- Experian (https://www.experian.com/fraud/center.html).

A fraud alert tells creditors to follow certain procedures, including contacting you, before they open any new accounts or change your existing accounts. For that reason, placing a fraud alert can protect you, but also may delay you when you seek to obtain credit. As of September 21, 2018, initial fraud alerts last for one year. Victims of identity theft can also get an extended fraud alert for seven years. The phone numbers for all three credit bureaus are listed above.

**Monitoring:** You should always remain vigilant and monitor your accounts for suspicious or unusual activity.

**File Police Report**: You have the right to file or obtain a police report if you experience identity fraud. Please note that in order to file a crime report or incident report with law enforcement for identity theft, you will likely need to provide proof that you have been a victim. A police report is often required to dispute fraudulent items. You can generally report suspected incidents of identity theft to local law enforcement or to the Attorney General.

ELECTRONICALLY FILED - 2025 Apr 17 9:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

**FTC and Attorneys General:** You can further educate yourself regarding identity theft, fraud alerts, security freezes, and the steps you can take to protect yourself, by contacting the consumer reporting agencies, the Federal Trade Commission, or your state Attorney General.

The Federal Trade Commission can be reached at: 600 Pennsylvania Avenue NW, Washington, DC 20580, www.identitytheft.gov, 1-877-ID-THEFT (1-877-438-4338), TTY: 1-866-653-4261. The Federal Trade Commission also encourages those who discover that their information has been misused to file a complaint with them. You can obtain further information on how to file such a complaint by way of the contact information listed above. You have the right to file a police report if you ever experience identity theft or fraud. Please note that in order to file a report with law enforcement for identity theft, you will likely need to provide some proof that you have been a victim. Instances of known or suspected identity theft should also be reported to law enforcement. This notice has not been delayed by law enforcement.

**For District of Columbia residents**, the District of Columbia Attorney General may be contacted at: 400 6th Street, NW, Washington, D.C. 20001; 202-727-3400; and oag.dc.gov.

**For Maryland residents**, the Maryland Attorney General can be contacted at 200 St. Paul Place, 16th Floor, Baltimore, MD 21202, 1-888-743-0023, and www.oag.state.md.us.

**For New Mexico residents,** you have rights pursuant to the Fair Credit Reporting Act, such as the right to be told if information in your credit file has been used against you, the right to know what is in your credit file, the right to ask for your credit score, and the right to dispute incomplete or inaccurate information. Further, pursuant to the Fair Credit Reporting Act, the consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information; consumer reporting agencies may not report outdated negative information; access to your file is limited; you must give your consent for credit reports to be provided to employers; you may limit "prescreened" offers of credit and insurance you get based on information in your credit report; and you may seek damages from violators. You may have additional rights under the Fair Credit Reporting Act not summarized here. Identity theft victims and active duty military personnel have specific additional rights pursuant to the Fair Credit Reporting Act. We encourage you to review your rights pursuant to the Fair Credit Reporting Act by visiting www.consumerfinance.gov/f/201504_cfpb_summary_your-rights-under-fcra.pdf or by writing Consumer Response Center, Room 130-A, Federal Trade Commission, 600 Pennsylvania Ave. N.W., Washington, D.C. 20580.

**For North Carolina residents**, the Attorney General can be contacted at 9001 Mail Service Center, Raleigh, NC 27699-9001, 1-877-566-7226 or 1-919-716-6400, and www.ncdoj.gov.

**For New York residents**, the Attorney General may be contacted at Office of the Attorney General, The Capitol, Albany, NY 12224-0341, 1-800-771-7755, and https://ag.ny.gov/.

**For Rhode Island residents**, the Rhode Island Attorney General can be reached at 150 South Main Street, Providence, Rhode Island 02903, www.riag.ri.gov, and 1-401-274-4400. Under Rhode Island law, you have the right to obtain any police report filed in regard to this incident. There are approximately [#] Rhode Island residents that may be impacted by this event.

ELECTRONICALLY FILED - 2025 May 13 7:01 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801297

# AFFIDAVIT OF SERVICE

**BERKELEY COUNTY**
**SHERIFF'S OFFICE**

**SHERIFF DUANE LEWIS**

**CASE NO.:** 2025-CP-08-01297

**COURT DATE:**

MICHAEL DANIELL
***PLAINTIFF (S)***

**Vs**

R.L. HELMLY AS
REGISTERED AGENT
FOR HOME WIRELESS
DBA HOME TELECOM
***DEFENDANT (S)***

The undersigned, Deputy ***DAVID DRIGGERS***, says on oath that he served the following:

( ) AFFIDAVIT
(X) COMPLAINT
( ) FAMILY COURT COVESHEET
( ) COURT INFORMATION SHEET
( ) JUVENILE SUMMONS/PETITION
( ) MOTION AND AFFIDAVIT FOR EMERGECNY HEARING
( ) ORDER
( ) ORDER OF CONTINUANCE
( ) FINANCIAL DECLARATION
( ) PETITION FOR ORDER OF PROTECTION
(X) SUMMONS
( ) NOTICE OF HEARING
(X) OTHER- CLASS ACTION SUMMONS, PROPOSED CLASS ACTION COMPLAINT, PLAINTIFF'S MOTION TO CONSOLIDATE AND APPOINT INTERIM CLASS COUNSEL, EXHIBITS

By delivering the same to:

( ) Defendant/Plaintiff ______________________________, personally.
( ) ______________________________, personally.
(Note relation to defendant) a person of discretion residing at defendant's address.
(X) ___***ANTHONY DOUGLAS***________________ the ___***CHIEF OPERATIONS OFFICER***___
(Person served is corporate defendant) (title/office held)

And leaving with him/her one (1) copy of the same at ***579 STONY LANDING RD, MONCKS CORNER, SC 29461*** on the ***7TH*** day of ***MAY 2025*** at ***14:15*** AM/PM and that deponent knows the person so served to be the defendant mentioned and described in the pleadings served, and that deponent is not a party to nor interested in the action.

Signed ______________________________
**CPL DAVID DRIGGERS**

Sworn to me this on

8th day of May, 2025

______________________________
Notary Public for State of South Carolina
My Commission Expires: **October 12, 2033**

223 N Live Oak Dr
Moncks Corner, SC 29461
843-719-4417